UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CHERYL A. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 5:14-cv-00230-JHE |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION,[1] | ) |
| | ) |
| Defendant. | |

**MEMORANDUM OPINION**[2]

Plaintiff Cheryl A. Jones ("Jones") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Jones timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013.  See http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin in the case caption above.

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 11).

## I. Factual and Procedural History

Jones was a fifty-two old female at the time of the Administrative Law Judge's ("ALJ") decision. (Tr. 19). Jones has a GED (high-school diploma equivalent) and previously worked as a twister operator.[3] (Tr. 19).

Jones filed her application for a period of disability and DIB on April 12, 2011, alleging an amended onset date of March 29, 2011. (Tr. 11, 115-21, 129). The Commissioner denied Jones' application, and Jones requested a hearing before an ALJ. (Tr. 104). After a hearing, the ALJ denied Jones claim on November 9, 2012. (Tr. 8-25). Jones sought review by the Appeals Council, but it declined her request on December 11, 2013. (Tr. 1-3). On that date, the ALJ's decision became the final decision of the Commissioner. On February 9, 2014, Jones initiated this action. (*See* doc. 1).

## II. Standard of Review[4]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person

---

[3] Jones' previous work as a store manager is not vocationally relevant because she performed it more than fifteen years before the amended onset date.

[4] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[5]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2013.

    (1)      whether the claimant is currently employed;
    (2)      whether the claimant has a severe impairment;
    (3)      whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
    (4)      whether the claimant can perform his or her past work; and
    (5)      whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Jones last met the insured status requirements of the Social Security Act on December 31, 2011, and that Jones did not engage in substantial gainful activity from the alleged onset date of March 29, 2011 through her date of last insured, December 31, 2011. (Tr. 13). At Step Two, the ALJ found Jones has the following severe impairments: lumbar spondylosis, obesity, and right knee arthritis. (*Id.*). At Step Three, the ALJ found Jones does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Before proceeding to Step Four, the ALJ determined Jones' residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Jones has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b). She can lift and/or carry 20 pounds occasionally and ten pounds frequently. She can stand and/or walk or sit for six out of eight hours. She has no limitations upon using her upper extremities. She can operate hand and foot controls. She can frequently balance, stoop, crouch, and crawl. She cannot climb ladders, ropes, and scaffolds. She cannot tolerate concentrated exposure to unprotected heights and hazardous machinery. (Tr. 15).

At Step Four, the ALJ determined, through the date last insured, Jones is unable to perform any past relevant work. (Tr. 19). At Step Five, the ALJ determined, based on Jones' age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Jones could perform. (Tr. 20). Therefore, the ALJ determined Jones has not been under a disability and denied Jones' claim. (Tr. 21).

## V. Analysis

### A. Introduction

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Jones failed to demonstrate a

disability and the ALJ applied the proper standards to reach this conclusion. Jones' only contention is the ALJ erred because he failed to properly evaluate the credibility of Jones' complaints consistent with the Eleventh Circuit pain standard. (Doc. 9 at 3-11).

> **B.  The ALJ Properly Applied the Eleventh Circuit Pain Standard and There is Substantial Evidence to Support His Decision**

When a claimant attempts to establish disability based on subjective complaints, including pain, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996-374186. If the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her alleged symptoms and their effect on her work must be evaluated. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002).

The ALJ properly evaluated Jones' subjective complaint of pain in accordance with the regulatory criteria, Eleventh Circuit precedent, and SSR 96-7p. (*See* tr. 15-19). Citing to the

appropriate standard and relevant legal authority, (tr. 15-16), the ALJ found Jones satisfied neither prong of part two of the standard because (a) the objective evidence did not conform either to the severity of her alleged symptoms arising from her medically documented conditions and (b) those conditions could not reasonably be expected to give rise to the symptoms alleged, (*id.*).

The medical records do not indicate Jones' alleged pain and other symptoms were as limiting as she claimed from her alleged onset date of March 29, 2011, through her date of last insured, December 31, 2011. (Tr. 15-19). As the ALJ discussed, Jones underwent a right knee arthroscopy prior to the alleged onset date in November 2009, and a December 2010 x-ray showed significant osteoarthritis and medial joint space narrowing in the right knee. (Tr. 17, 220, 237). In January 2011, however, Jones reported improvement in her symptoms, except with weather change. (Tr. 233). She was told she was a candidate for knee replacement in the future, but Jones said she wanted to "hold off." (Tr. 17, 233).

In early March 2011, Jones indicated her pain was a three or four out of ten, with it being a seven or eight at its worst. (Tr. 230). Jones had a normal gait, there was no evidence of shuffling or ataxia, and she was able to heel and toe walk without any radicular symptoms. (Tr. 17, 231). While Jones had tenderness over the right SI joint, she had negative straight leg testing. (Tr. 17, 231). Jones had normal range of motion in all extremities, and there was no swelling or deformities in the joints. (Tr. 232). In mid-March 2011, Jones complained of some back pain but denied any weakness in her lower extremities. (Tr. 228). Range of motion in Jones' lumbar spine elicited some discomfort, but she had negative straight leg raises. (Tr. 228). Jones' extremities also had no gross swelling or edema and the range of motion was within functional limits. (Tr. 228).

On her alleged onset date, March 29, 2011, Jones complained of pain in her lumbar spine radiating down her right side that began that day. (Tr. 227). A MRI of Jones' lumbar spine showed spondylosis with radiculopathy. (Tr. 238). Specifically, the MRI revealed a broad based disc bulge at L5-S1 with some disc desiccation and mild facet arthrosis causing some bilateral foraminal stenosis. (*Id.*). Jones and her physician discussed treatment options including anti-inflammatory medication, physical therapy, and epidurals. (Tr. 227). Jones was placed on a home exercise program. (*Id.*). In late May 2011, Jones reported doing well overall, only mild discomfort with her lumbar spine range of motion, some pain during a straight leg raise while a slump test was negative, and normal range of motion in her extremities. (Tr. 17, 243).

In June 2011, Robert Heilpern, M.D., a state agency physician, reviewed the available evidence and opined that Jones could perform light work, but with no climbing ladders/ropes/scaffolds, and avoidance of all exposure to hazards. (Tr. 246-49).

In October 2011, Jones complained of right shoulder pain and was again placed on a home exercise program. (Tr. 18, 270-71). Also in October 2011, Jones complained of left knee pain lasting for a week or two. (Tr. 18, 268). Jones was in minimal distress, and she had only mild tenderness on the medial joint line of her right knee. (Tr. 268). X-rays of both knees showed good joint space and it was decided to pursue conservative treatment of the left knee with an injection. (Tr. 269, 272). During this time, Jones was also treated with medications including Celexa, Flexeril, Celebrx, and Lyrica for pain. (Tr. 260, 261,262, 280). The medical evidence from her treatment provided after this date refers to a period after Jones' date of last insured and is only relevant to the extent it sheds light on Jones' condition as it existed before her date of last insured. *See Anderson v. Schweiker*, 651 F.2d 306, 310 n.3 (5th Cir. 1981).[6]

---

[6] *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting

Jones fails to show error in the ALJ's credibility finding.  The ALJ properly noted Jones' testimony that her pain was a nine or ten out of ten was inconsistent with the record, specifically noting her March 2011 report that her pain was normally only three of four out of ten.  (Tr. 18, 230).  The ALJ also explained Jones had responded well to treatment, undermining her complaints. (Tr. 18, 243).  (*See* 20 C.F.R. 404.1529(c)(3)(iv); *Harwell v. Heckler*, 735 F.2d 1292 (11th Cir. 1984); *see also Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").  The records also show Jones' treatment was conservative, further undermining her allegations of disabling limitations.  (Tr. 18, 272).  *See* 20 C.F.R. 404.1529(c)(3)(v); SSR 96-7p; *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Jones' daily activities also undermine her complaints.  (Tr. 19).  Although not dispositive, a claimant's activities may show that the claimant's pain and other symptoms are not as limited as alleged.  *See* 20 C.F.R. 404.1529(c)(3)(i), SSR 96-7p; *Dyer*, 395 F.3d at 1212. Jones testified she drives to the pharmacy, doctors' offices, and the grocery store and she walks around the grocery store.  (Tr. 34, 36).  She also indicated on her disability report she does house work, laundry, dishes, cooks, goes to the store, and attends church.  (Tr. 142, 145, 147). Additionally, Jones testified she applied for work in the last six to nine months prior to the hearing.  (Tr. 39).  20 C.F.R. 404.1671; *see Bently v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995) (record evidence of contemplating work (i.e., applying for jobs) indicates the claimant did not view his pain as disabling).  The ALJ did not improperly rely on Jones' daily activities, nor did he find these activities dispositive evidence of her ability to work as she suggests.  However, the ALJ properly concluded these daily activities undermine the severity of Jones' allegations.

---

as binding precedent all decisions of the Former Fifth Circuit handed down prior to October 1, 1981).

Jones also relies on evidence from after the expiration of her insured status to attack the ALJ's credibility finding. (Doc. 9 at 8). Even if Jones' condition worsened, any deterioration in her condition after her date of last insured is irrelevant to whether she was disabled on or before December 31, 2011. *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).[7]

Jones failed to meet her burden and did not provide sufficient evidence supporting her allegations of disabling pain and other symptoms. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. 404.1512(a), (c), 404.1529(a), SSR 96-7p. Her assertion she is limited to only sedentary work, (doc. 9 at 10), is not supported by the record. The ALJ properly considered the relevant evidence and performed his duty as the trier of fact of weighing and resolving any conflicts in the evidence. Substantial evidence supports the ALJ's findings and his conclusion Jones was not disabled within the meaning of the Social Security Act.[8]

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Jones' claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

---

[7] *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting as binding precedent all decisions of the Former Fifth Circuit handed down prior to October 1, 1981).

[8] The vocational expert's testimony provides substantial evidence to support the ALJ's conclusion that Jones could perform other work and was not disabled. Specifically, the ALJ first looked to the Medical-Vocational Guidelines (commonly referred to as the "Grids") to determine whether they might direct a conclusion of disabled or not disabled. (Tr. 20). Recognizing Jones had nonexertional limitations, the ALJ could only use the Grids as a framework for his decision. (*Id.*). 20 C.F.R. 404.1569, 404.1569a(d); 20 C.F.R. pt. 404, subpt. P, app 2, 200.00(e)(2). Because Jones' vocational factors did not fit the criteria of a particular Grid rule, the ALJ elicited testimony from a vocational expert to help determine whether work existed. (Tr. 20, 48-56). The ALJ properly questioned the vocational expert and relied on her testimony in reaching his conclusion Jones was not disabled. (Tr. 20-21).

DONE this 16th day of March 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE